**Melvin Leon JACKSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 13–92–202–CR, 13–92–272–CR, and 13–92–273–CR.**

Court of Appeals of Texas,
Corpus Christi.

April 1, 1993.

Jan Krocker, Houston, for appellant.

John Holmes, Jr., Rikke Burke, Houston, for appellee.

Before KENNEDY, DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

KENNEDY, Justice.

Melvin Jackson, a/k/a Michael Jackson, was convicted by a jury of three counts of robbery. After Jackson pleaded true to two enhancement allegations, the trial court assessed punishment at 55 years' imprisonment. Jackson appeals by five points, urging four missteps in trial procedure and a claim of ineffective assistance of counsel. We reverse for ineffective as-

sistance of counsel and remand for new trial.

Jackson victimized the same convenience store clerk in the same manner for the same goal three times within two weeks. On April 21, April 25, and May 1, 1991, Jackson went into a convenience store in Harris County, told the clerk he had a gun and would kill him if he got in the way, and filled a box with multiple cartons of cigarettes.

Houston police suspected that Jackson was the perpetrator, so a police officer ran a computer check to determine his background. The officer discovered an outstanding traffic warrant for failure to maintain financial responsibility. The officer went to Jackson's home and arrested him.

Jackson raises five points of error that apply to all three counts.[1] The first four points of error fail because Jackson failed to preserve these points for our review. The rules provide:

> In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context.

Tex.R.App.P. 52(a); *see also Turner v. State*, 805 S.W.2d 423, 431 (Tex.Crim.App. 1991), *cert. denied* —— U.S. ——, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). Jackson complains that he was deprived of due process because the prosecutor revealed prior acts of misconduct by appellant that were irrelevant and prejudicial, the court failed to respond to a note from the jury, the court cautioned venire members and jurors to be careful when leaving the courthouse, and the court failed to instruct on the lesser included crime of theft. Jackson objected to none of these occurrences, nor did he call them to the trial court's attention later as through a motion for new trial. The failure to object means that the error is unpreserved and cannot be raised here. This lack of preservation precludes our re-

1. Each count was the subject of a separate case number. Count one is cause no. 13–92–202–CR, count two is cause no. 13–92–272, and count three is cause no. 13–92–273.

view even of the jury charge question. Under *Thomas,* a post-*Almanza*[2] case, we do not consider whether the trial court erred in failing to give a jury instruction on a lesser-included offense when the defendant did not request that instruction. *Thomas v. State,* 701 S.W.2d 653 (Tex.Crim.App. 1985). Only Jackson's ineffective assistance of counsel claims remain.

Jackson raises several instances wherein he claims his counsel was ineffective. The most serious allegation is that Jackson's counsel erred in not striking venire member no. 28 (VM–28), the last juror impanelled, who stated in voir dire that his recent experience as a victim of burglary would make it difficult for him to be impartial. Jackson contends that his trial counsel's interaction with this and other venire members indicates counsel rendered ineffective assistance in voir dire. The following exchange with VM–28 occurred in voir dire:

THE COURT: Were you the victim of a robbery?

[VM–28]: Yes. Someone broke into my house while we were sleeping. And I had a litter of Sheep puppydogs and they stole one of them. We were not actually confronted but that break-in while we were there—

THE COURT: ... So my question to you is, would the fact of having an assailant in your home while you were asleep, is that going to impact on your impartiality in this trial?

[VM–28]: I would have to say it probably would.

Another venire member (VM–29), who was not struck (either for cause or peremptorily) but was not reached for the jury numerically because of duplicate strikes by the State and Jackson, had the following exchange with the court:

[VM–29]: I was involved in an armed robbery. I was held at gunpoint. So this is a sensitive issue for me.

THE COURT: So you're talking about the nature of the indictment is such that you don't feel that you would be fair in this case, though you would be fair in some other type of unrelated offense?

[VM–29]: Yes.

A third venire member (VM–23), who was later struck for cause (though there is no motion by either counsel in the record), stated that her car had been stolen and her father's car was stolen at gunpoint. She had the following exchange with the court:

THE COURT: My question at this point, [VM–23] is, would that incident impact on your impartiality as a juror in this case? Do you think you can put that out of your mind?

[VM–23]: I could try. I mean, just to be honest with you, I can't stand here and say no or I can't stand here and say yes.

THE COURT: Unfortunately, that's what the law requires, that you commit one way or the other. And that's because the defendant is entitled by law, and under the Constitution, to have a jury of his peers, who are unbiased, and are able to be objective when considering the facts of this case. And so at this point, it'll be necessary for you to state that, not only will you try, but that you believe or that you think that you are capable of setting that aside. And if there is any question in your mind, if your commitment is conditional, then we need to know that.

[VM–23]: To be fair to him, I'd have to say no then, because it was pretty recent that it happened.

During defense counsel's section of the voir dire, the following exchange with VM–23 occurred:

[DEFENSE COUNSEL]: I think that back when the Judge was giving you his—or explaining to you what the law was, that you, at that time, stood up, and you had a problem with some aspects of the law; is that correct?

[VM–23]: No, actually, my father was involved in an armed robbery.

[DEFENSE COUNSEL]: How long ago was that?

[VM–23] It's been just like, one or two months.

[DEFENSE COUNSEL]: That recent?

2. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim.App.1984).

[VM–23] Yes, very recently.

[DEFENSE COUNSEL]: And I take it that still weighs on your mind, does it not?

[VM–23] Yes.

[DEFENSE COUNSEL]: Do you feel like you could be a fair and impartial juror, in light of the fact that this man, sitting over here, is charged with robbery?

THE COURT: [Defense counsel], to refresh your recollection, [VM–23] has already indicated that she would not be able to be fair and impartial.

[DEFENSE COUNSEL]: All right. Well, I've got it written down. Thank you, Your Honor.

At the end of defense counsel's voir dire, the court said to the opposing counselors:

Okay. As I recall there are two strikes for cause. There is [venire member no. 23] and [venire member no. 13]. Okay. Now, are there any other persons that you all want to question before me? Okay.

The court granted defense counsel's motion to strike VM–13 for cause after VM–13 said that his past convictions, his sons' convictions, and his current occupation as a minister might interfere with his ability to be a juror. There is no motion on the record from either counsel with regard to VM–23.

We must examine whether Jackson's counsel's performance failed to meet an objective standard for reasonable performance and whether that failure deprived the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ex parte Walker*, 777 S.W.2d 427, 430 (Tex.Crim. App.1989). Counsel is allowed wide latitude within reasonable professional standards to make tactical decisions. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. We look at the totality of the representation. *Ex parte Carillo*, 687 S.W.2d 320, 324 (Tex.Crim.App.1985); *Vasquez v. State*, 819 S.W.2d 932, 938 (Tex.App.—Corpus Christi 1991, pet. ref'd). Isolated failures to object do not equal ineffective assistance of counsel, and the representation need not be error-free. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App.1984); *Vasquez*, 819 S.W.2d at 938. The second prong of the test requires that the defendant show a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Vasquez*, 819 S.W.2d at 938.

The thought occurs to us that perhaps we have so often used these standards to judge ineffective assistance of counsel claims that we have come to regard these as pegs to hang our hats on in our hesitance to find representation to be ineffective.[3]

There is logic to be found in each of the precepts just recited and in wanting a case "once tried to stay tried." Our system of criminal justice would founder under its own weight if criminal trials had to be repeated, as Broadway shows and football plays have to be rehearsed, until perfection is achieved.

On the other hand, we should not be so cold-hearted as to apply the old axiom that "a doctor's mistakes go to the cemetery and a lawyer's mistakes go to jail." Detente can be found between these two extremes.

An analogous philosophical discussion can be had using the example that where discretion is vested in a judge or a jury we will not disturb the same unless it be shown that the discretion has been abused. By using the term "abused" we reserve some measure of judgment to the appellate courts, not to substitute our judgment for that of the forum granted the discretion, but merely to affirm the proposition that abuse *can* occur. There *is* such a thing as abuse.

Likewise, there *is* such a thing as "ineffective assistance of counsel" and, while we should tread softly in finding it to exist and thus not imprison attorneys in concrete walls in dictating how they should try their cases, we should adopt an attitude

---

3. These standards are usually accompanied by a litany of plus factors, i.e. "he cross-examined witnesses," "filed motions," and "made an appropriate jury argument."

expressed by one United States Supreme Court justice who observed concerning obscenity, "I can't define it but I know it when I see it." As a matter of fact, we do, and we call it "judging each case by its own merits." In the case before us, three members of the jury panel stated that they could not be fair because of recent experience as crime victims. (One was subsequently challenged for cause [VM–23], while one was not reached [VM–29].) We note from reading the record that the fair and perceptive trial judge gave defense counsel every opportunity to challenge the remaining jurors for cause, which he did not do.

This case is distinguishable from *Delrio v. State*, 840 S.W.2d 443 (Tex.Crim.App. 1992), where defense counsel in a possession of cocaine case accepted a juror who was an ex-narcotic officer who stated that he would probably not be fair.[4] The officer was Hispanic, as was the defendant, and when he was not challenged he became the only Hispanic on the jury. The Court of Criminal Appeals (with one dissent) noted this fact in reversing the Houston Court of Appeals (14th District) which had found ineffective assistance. The Court of Criminal Appeals also surmised that defense counsel might have felt that a conviction was likely but that in assessing punishment the ex-narcotics agent, because of his background, might have noted the relative participation of the parties involved which would inure to the defendant's benefit.

As stated, we are aware of *Delrio* and the reasons stated by the Court of Criminal Appeals in declining to find ineffective assistance under that set of facts. The record in the case before us reveals no such justification for not challenging venire member number 28.

We hold that the standards established in *Strickland* and its progeny were not met here. Counsel's failure to strike jurors who expressed bias that weighed against appellant, coupled with the impanelling of one of those biased jurors, rendered Jackson's counsel's assistance ineffective. We grant appellant's fifth point of error and reverse and remand for a new trial.

---

**4.** The exchange in *Delrio* was as follows:

THE COURT: Mr. Martinez, you indicated earlier that you knew the defendant and you might have a problem.

[Martinez]: Yes, sir, I wanted to make the statement to the Court that I'm an ex-narcotics officer for the City of Houston and that I didn't want to say that in front of the jury to throw a monkey wrench into the voir dire.

THE COURT: You feel like you know this defendant by virtue of that employment?

[Martinez]: Yes, sir.

THE COURT: Therefore, you feel you probably would not be able to be a fair and impartial juror?

[Martinez]: Exactly.

THE COURT: Do you have a challenge?

[Defense Counsel]: All that we are asking you at this point is whether or not under the proper set of circumstances you can be a fair and impartial juror and put aside your feelings, whatever they are, based on prior experiences and listen strictly to the facts of the case and render a verdict accord to the law.

[Martinez]: I couldn't be impartial, I'm saying.

THE COURT: There is no challenge? Have a seat.

*Delrio*, 840 S.W.2d at 444–445.