

# NUMBER 13-03-00608-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**MARCUS LEE TUCKER,**                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                      **Appellee.**

---

### On appeal from the 179th District Court
### of Harris County, Texas.

---

# MEMORANDUM OPINION ON REMAND

**Before Chief Justice Valdez and Justices Yañez and Hill[1]**
**Memorandum Opinion on Remand by Justice Hill**

Marcus Lee Tucker appealed his conviction by a jury for the offense of aggravated

assault with a deadly weapon, with the complainant being a member of his household.

---

[1] Retired Second Court of Appeals Chief Justice John G. Hill assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (Vernon 2006).

*See* TEX. PENAL CODE ANN. § 22.02(b)(1) (Vernon Supp. 2008).  After hearing evidence of prior convictions, the trial court assessed his punishment at thirty-five years in the Texas Department of Criminal Justice, Institutional Division.  Upon his appeal to this Court, we reversed the judgment and ordered that this cause be remanded to the trial court for the entry of a judgment of acquittal, holding that the evidence was legally insufficient to support his conviction.  Upon the State's petition for discretionary review, the Texas Court of Criminal Appeals, holding that the evidence is legally sufficient to support the conviction, reversed our judgment and remanded this cause so that we might consider Tucker's remaining issues on appeal.  *See generally Tucker v. State*, 221 S.W.3d 780, 781 (Tex. App.–Corpus Christi 2007), *rev'd*, 274 S.W.3d 688 (Tex. Crim. App 2008).

In the four remaining issues, Tucker contends that:  (1) the evidence is factually insufficient to support his conviction because the evidence failed to prove that the "unknown weapon" that the indictment alleges that Tucker used in the commission of the offense was a deadly weapon (Issue 2); (2) the trial court abused its discretion in denying his motion for new trial because he established by a preponderance of the evidence that his trial counsel provided ineffective assistance throughout the trial (Issue 3); (3) his trial counsel was ineffective at the punishment stage of the trial where he failed to investigate the conviction alleged for enhancement or to argue to the trial court that it had not resulted in a prior conviction; (Issue 4); and the evidence was legally insufficient to prove the allegation in the first enhancement paragraph of the indictment since the conviction alleged in that paragraph did not result in a final conviction; (Issue 5).  We affirm the conviction, but reverse and remand for a new hearing on punishment.

2

## I. FACTUAL INSUFFICIENCY

Tucker asserts in issue two that the evidence is factually insufficient to support his conviction. To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004)); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11.

Houston police officer Dennis Vonquintus testified that he arrived at the scene and saw the complainant's shirt soaked in blood. Vonquintus testified primarily about two wounds: a puncture wound to the back of the complainant's neck near her spine, and a puncture mark on her arm. Upon noticing the second wound, the complainant stated to Vonquintus that appellant carried a two-inch folding knife. Vonquintus was told by the complainant that she and Tucker had fought, but she had not seen him use a weapon other than his fists. Vonquintus indicated that the two injuries could not have been caused by a fist. He said there was another injury "somewhere around her upper back," and other injuries on the complainant's back, but he could not see them. Vonquintus asserted that, in his experience, these were clean cuts and "my first thought was that [Tucker] had stabbed [the complainant]." At this point in his testimony, the following exchange occurred between the prosecutor and Vonquintus:

Q. Did you know what object, specifically?

A. No.

Q. Would you classify it as an unknown object?

A. Yes.

Q. Would you classify it as a deadly weapon?

A. Yes.

Vonquintus related that he could not tell if the bleeding was life-threatening, only that the complainant was bleeding profusely. He acknowledged that the complainant never said she had been stabbed. However, Vonquintus formed that opinion because, in his experience, victims of crime do not always realize the nature of their injuries.

The complainant's medical records state she was treated for stab wounds to the back and forearm, but do not indicate that either wound required stitches. The complainant was released after spending the night in the hospital. After leaving the hospital, the complainant was interviewed and photographed by Janet Arceneaux, also an officer with the Houston police department.

Arceneaux described the complainant's injuries as being "lacerations," which was clarified as meaning "some kind of cut." She indicated that the complainant suffered "a through and through laceration cut," saying it appeared "that whatever object that was used went all the way through her arm." She said the complainant suffered "stab wounds to the back of her neck, close to her spine, and she was in a lot of pain." She testified that the injuries could have been inflicted by a knife and perhaps a key, depending on the type of key and the manner of its use. During her testimony, Arceneaux answered affirmatively when asked if the injuries she saw on the complainant were consistent with being inflicted

4

with some sort of object that could be considered a deadly weapon. At one point, Arceneaux described a bandage on the complainant's back which covered an injury. Instead of removing the bandage, Arceneaux relied on the complainant's description of the injury. When asked what she had been told by the complainant, Arceneaux testified, "She had a stab wound. Well, I'm sorry. She had a laceration to the back upper neck area that appeared to be like a cut. And then she had one close to her spine." Arceneaux said that if a key had been used to inflict this type of injury, she would consider the key a deadly weapon. She testified that when she asked the complainant what Tucker had stabbed her with, she replied, "I know he has a knife and I know he had keys in his hand."

The complainant testified that Tucker did not have a knife or keys in his hand during the physical altercation. She indicated that she repeatedly told the medical staff that she had not been stabbed, but the doctor insisted that she had been stabbed. She also stated that she received no stitches for any injury sustained in the altercation, a fact confirmed by the medical records. Considering all of this evidence in a neutral light, we hold that the evidence is factually sufficient to support Tucker's conviction because the verdict is not clearly wrong or manifestly unjust and is not against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 414. We overrule issue two.

## II. Motion for New Trial

Tucker urges in issue three that the trial court abused its discretion in overruling his motion for new trial because he established by a preponderance of the evidence that his counsel provided ineffective assistance throughout the trial. In order to prevail on his claim of ineffective assistance of counsel, an appellant must first show that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Bone v.*

5

*State*, 77 S.W.3d 828, 832 (Tex. Crim. App. 2002). An appellant must prove, by a preponderance of the evidence, that his counsel's representation fell below the objective standard of professional norms. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). Second, an appellant must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Id.*

Our review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Bone*, 77 S.W.3d at 832. Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional. *Id*. Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Id.*

In the case at bar, the trial record contains sufficient information to permit us to fairly evaluate the merits of Tucker's allegations of ineffective assistance of counsel because Tucker presented evidence on his claim at a hearing on his motion for new trial. When an appellant has presented evidence on his counsel's alleged ineffectiveness at a hearing on a motion for new trial, we must review the application of the test pronounced in *Strickland* through the prism of an abuse of discretion standard. *See State v. Gill*, 967 S.W.2d 540, 542 (Tex. App.–Austin 1998, pet. ref'd). The granting or denying of a motion for new trial is within the discretion of the trial court. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App.

6

1995).  We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable.  *Id.*

Tucker specifies three instances during the guilt-innocence phase of the trial which he argues constitute examples of his having been denied the effective assistance of counsel.  We will examine each of those examples individually and as a whole.  Tucker argues that his counsel was ineffective for failing to challenge a veniremember for cause.  The issue was raised as a result of the testimony of veniremember 32 on voir dire:

| VENIREPERSON: | I have a twin sister who is going through family abuse right now, and I don't think I can be . . . I mean, I'll be harder on that person because of the things that we're going through right now. |
|---|---|
| THE COURT: | Well, would you require that the state prove to you beyond a reasonable doubt that the defendant was guilty of the offense charged? |
| VENIREPERSON: | Based on what we've experienced the last couple of months… |
| THE COURT: | I'm sorry.  What? |
| VENIREPERSON: | Based on what I've experienced the last couple of months was [sic] my sister, I don't think I can. |
| THE COURT: | In other words, do you think you start off believing that the defendant may be guilty? |
| VENIREPERSON: | Yeah. |
| DEFENSE COUNSEL: | You wouldn't require the state to prove his guilt beyond a reasonable doubt? |
| VENIREPERSON: | To be honest with you, I don't know.  I don't know at this point. |
| THE COURT: | All right.  We may talk with you then after. |

After the jury was seated, the following conversation occurred between the court and defense counsel:

THE COURT: Counsel, have you double checked your list?

PROSECUTOR: I have, Your Honor. The State has no objection to the jury as seated.

THE COURT: Mr. Milledge?

DEFENSE COUNSEL: Hold on, Judge. Judge, may we approach?

THE COURT: Yes, come to the bench, please.

(At the bench)

DEFENSE COUNSEL: I don't know. No. 32 was the lady that stood up, and that's the one that's going through some stuff right now. [Veniremember 32] is going through some family issues right now in a similar matter. That's the one that said she couldn't be fair.

THE COURT: What is her number?

DEFENSE COUNSEL: 32

PROSECUTOR: I didn't have that down as a strike for cause.

THE COURT: Did you strike her for cause?

DEFENSE COUNSEL: I had intended on… I don't know.

THE COURT: I'm sorry. I'm afraid with no strike, you were both aware of it so it has to be a decision.

DEFENSE COUNSEL: One other thing, I guess for lack of a better choice of words, [Veniremember 32] should have been struck for cause. She's indicated that she cannot be fair because of the fact that she's having problems similar to this in her own family. I guess I'm just taking exception to the fact that she's on the jury panel and it was my intent to strike her. I don't know what happened, how she got away.

THE COURT: All right, counsel. I'm afraid that's not timely.

DEFENSE COUNSEL: I understand. I'm just trying to make a record.

8

THE COURT: Sure. All right. All right.

At the hearing on the motion for new trial, defense counsel testified that leaving veniremember 32 on the jury was not part of his trial strategy. He indicated that he did not consider the veniremember to be a favorable venireperson whom he wanted on the jury.

Veniremember 32's testimony on voir dire was equivocal. At first, she testified that, based upon her twin sister going through family abuse at that time, she did not think she could require the State to prove its case beyond a reasonable doubt. A short time later, in response to a question by defense counsel, she said that she did not know whether or not she would require the State to prove the defendant's guilt beyond a reasonable doubt. Given these facts, we are unable to conclude that trial counsel was ineffective for failing to strike veniremember 32.

Tucker urges that counsel was ineffective in failing to strike veniremember 32 because she testified that she could not be fair to him. Veniremember 32 said she would be harder on Tucker because her twin sister was going through a family abuse situation. Although she first said she did not think she could require the State to prove his guilt beyond a reasonable doubt, she later said she did not know whether she could. Because of her equivocal answer, we cannot say that the trial court abused its discretion in impliedly finding that counsel was not ineffective for failing to strike veniremember 32. Counsel relies upon the cases of *Shaver v. State*, 280 S.W.2d 740 (Tex. Crim. App. 1955); *Alaniz v. State*, 937 S.W.2d 593 (Tex. App.–San Antonio 1996, no pet.); *Knight v. State*, 839 S.W.2d 505 (Tex. App.–Beaumont 1991, no pet.); *Nelson v. State*, 832 S.W.2d 762 (Tex. App.–Houston [1st Dist.] 1992, no pet.); and *Montez v. State*, 824 S.W.2d 308 (Tex.

App.–San Antonio 1992, no pet.). We find all of these cases to be distinguishable because none of these cases involved veniremembers whose testimony was equivocal, as in this case.

A second instance cited by Tucker as an example of his counsel rendering ineffective assistance was his counsel's failure to call Valentino Cormier as a witness. In finding Tucker guilty of the offense charged, the jury necessarily found that he used a deadly weapon during his assault on the complainant, a member of his household. At the hearing on Tucker's motion for new trial, Cormier testified that he was a neighbor of Tucker and the complainant, and he stopped and observed them fighting for twenty to thirty seconds. He indicated that he saw the complainant pushing and hitting Tucker in his face. He said that he was close enough to see if Tucker had a weapon in his hands. He related that as far as he could see, Tucker did not have any sort of item or weapon in his hands. He acknowledged that about two days after the assault, he came to Tucker's house to talk about buying a car and, while there, he told him that he had witnessed the assault. He indicated that he gave Tucker his name and phone number. Cormier acknowledged that he had prior convictions for evading arrest, illegally carrying a weapon, and possession of marijuana.

The assault occurred on January 14, 2003. Tucker gave a statement to the police on January 21, 2003. At the hearing on the motion for new trial, Tucker acknowledged that he had not mentioned Cormier to police on that date because Cormier had not yet talked to him. Tucker's trial counsel, Samuel E. Milledge, acknowledged that Cormier was not on the list of witnesses that Tucker had given him prior to trial. He said he believed that Tucker told him about Cormier late in the trial, but was not sure. He indicated that if he had

10

known about Cormier in a timely manner, he probably would have called him, but that if he did not call him, it was a strategic move. Milledge also insisted that Tucker did not give him Cormier's last name, address, or telephone number. He testified that by the time the trial was going on, he had already formulated his defense strategy.

Tucker testified that he had told his trial counsel about Cormier in July or early August, which would have been before trial. The complainant testified at the hearing that Milledge knew about Cormier, but decided not to use him.

Given the testimony presented at the hearing on Tucker's motion for new trial, the judge could have determined that, if Tucker ever really told his counsel about Cormier, it might not have been until after the conclusion of the trial, or that his counsel did not have sufficient information late in the trial that would have allowed him to call Cormier as a witness.

The third instance of ineffectiveness cited by Tucker is counsel's failure to request a jury instruction on the lesser-included offense of assault. *See* TEX. PEN. CODE ANN. § 22.01 (Vernon Supp. 2008). Milledge testified that he did not request the instruction because, after consulting with several lawyers and reviewing the medical records and "everything that we had before us," he did not see "where we would be able to get around the serious bodily issue." He acknowledged that it was possible that there might have been an issue in a juror's mind as to whether any weapon used was capable of causing serious bodily injury.

Tucker acknowledges that it may be reasonable trial strategy not to request a charge on a lesser-included offense. *Lynn v. State*, 860 S.W.2d 599, 603 (Tex. App.–Corpus Christi 1993, pet. ref'd). Both Tucker and the complainant, the only

11

witnesses of the assault who testified at trial, testified that there was no weapon used in the assault. If the jury had believed them, then, in the absence of an instruction on the lesser-included offense of assault, Tucker would have been acquitted. There was no evidence that, if a weapon was used, that it was not a deadly weapon, one capable of causing death or serious bodily injury. As has already been noted, there was evidence that any weapon used in the assault was a deadly weapon. We hold that under the facts as outlined here, the trial court could reasonably have concluded that counsel's election not to submit the lesser-included offense of simple assault did not render counsel's representation ineffective. Based upon our analysis, considering each of the three instances of ineffectiveness of counsel alleged by Tucker, both individually, and as a group, we hold that the trial court did not abuse its discretion in denying Tucker's motion for new trial. We overrule issue three.

### III. Legal Insufficiency of Enhancement Paragraph

Tucker urges in issue five that the evidence is legally insufficient to prove the allegation in the first enhancement paragraph of the indictment because the conviction alleged in that paragraph did not result in a final conviction. It is undisputed that the conviction alleged in the first enhancement paragraph of the indictment was reversed on appeal and later dismissed, and was therefore not final. Consequently, the evidence is legally insufficient to support the allegations of the indictment. Where, as here, the evidence is legally insufficient to support the allegations of the indictment, we do not conduct a harmless-error analysis. *Fletcher v. State*, 214 S.W.3d 5, 8 (Tex. Crim. App. 2007); *see also Jordan v. State*, 256 S.W.3d 286, 291 (Tex. Crim. App. 2008). The State urges that a harmless-error analysis is required, relying on the opinion of *Cain v. State*, 947

12

S.W.2d 262, 264 (Tex. Crim. App. 1997). We find *Cain* distinguishable because it did not involve a situation of legal insufficiency of the evidence to support an enhancement paragraph. We sustain issue five.

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Tucker contends in issue four that his trial counsel was ineffective for failing to investigate the alleged prior conviction which was not a final conviction and by failing to point out the lack of finality of that conviction to the trial court. In view of our disposition of issue five, we need not consider this issue.

### V. CONCLUSION

We affirm the judgment of conviction but reverse the judgment as to punishment and remand this cause for a new hearing on punishment. *See Jordan*, 256 S.W.3d at 291; *Fletcher*, 214 S.W.3d at 8.

JOHN G. HILL
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion on Remand delivered
and filed this 10th day of September, 2009.