Robert Earl NELSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–90–00960–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 18, 1992.

Frances Northcutt, Houston, for appellant.

John B. Holmes, Dist. Atty., Linda West, Michael Beckwith, Asst. Dist. Attys., Houston, for appellee.

Before OLIVER–PARROTT, C.J., and MIRABAL and PRICE,[1] JJ.

## OPINION

PRICE, Justice (Assigned).

This appeal is from a conviction for credit card abuse. The jury assessed punishment at 50–years confinement as a two-time repeat offender.

In two points of error, appellant claims his trial counsel was ineffective because he failed to challenge members of the jury panel who expressed preconceived ideas of appellant's guilt, and he failed to object to numerous prejudicial entries in a government business record.

At the beginning of voir dire, the trial judge explained to the jury panel that an indictment was no evidence of an accused's guilt. He stated the indictment was a mechanism for initiating cases assigned to the district courts, and informs the State of the elements of the offense it must prove

and the accused of what he is to defend against.

During voir dire, appellant's counsel interrogated members of the jury panel about their attitudes toward certain legal principles. The following occurred:

MR. ROBERSON [for the Appellant]: Now, are there any among you who feel there that merely because there is smoke there is fire? And I speak of the fact that a person is charged. Do you really feel that he is guilty of a crime to begin with?

MS. HOWARD: Yes, I do.

MR. ROBERSON: You do. You do feel that way?

MS. HOWARD: Yes, I do. Generally you are not accused falsely.

MR. ROBERSON: All right. And how deeply does that feeling go within you?

MS. HOWARD: With what?

MR. ROBERSON: How deeply does that feeling go within you that you feel there that if they are charged—if they are initially charged they are guilty?

MS. HOWARD: I just feel that way.

MR. ROBERSON: And, sir, Machala?

MR. MACHALA: I think there is a good chance that he is sitting there for a reason.

MR. ROBERSON: Do you feel the same way? I just want a yes or no answer. Do you feel he is automatically guilty because he has been indicted?

MR. MACHALA: I don't think it's a yes or a no. I just say there is a good chance.

MR. ROBERSON: I ask you, again, ma'am.

MS. HOWARD: Yes, I feel the same way, there is a good chance.

MR. ROBERSON: Do you really feel, though, that you would be going into a trial thinking merely because a person was charged that he is guilty? Is that correct?

MS. HOWARD: Yes.

MR. ROBERSON: And you, sir?

1. The Honorable Frank C. Price, former justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

MR. MACHALA: I would tend that way. I mean, sitting there for a reason. Maybe after listening to the facts of a case maybe I might go otherwise. I am just saying—just looking, I would tend to guilty. I don't know, I would have to wait and see and hear the facts.

MR. ROBERSON: Anyone on the second row?

A PANELIST: I agree with him.

MR. ROBERSON: All right. Anyone else on the second row? Third row?

A PANELIST: I concur.

MR. ROBERSON: You believe that the mere fact that a person has received what is known as an Indictment, that he is automatically guilty because nine of twelve people have said there that he should stand trial? Who else on that row? Yes, sir.

A PANELIST: I would tend to think that he is guilty.

MR. ROBERSON: Fourth row. And the fifth row? Thank you for your honesty.

MR. ROBERSON: All right. Ms. Howard, I am back to you again. You still feel there that in the event a defendant does not take the stand there that you would have to find him guilty? Is that correct?

MS. HOWARD: No, that was not your original question. I feel that if someone is here in the first place there is a good chance he is guilty.

MR. ROBERSON: No, my question was, if I recall, the mere fact if he were charged with an Indictment, which I am holding here in my hand, would you consider that as him being guilty?

MS. HOWARD: I can't say definite, positively because I was not there, but I would say my feeling is he probably was or would not have been accused in the first place.

MR. ROBERSON: Thank you, ma'am. And how do you pronounce your last name, sir?

MR. MACHALA: Machala.

MR. ROBERSON: And your feeling about the Indictment itself, do you feel there that merely because he is charged by way of Indictment that he is guilty?

MR. MACHALA: Like I said awhile ago, I tend to feel that he is guilty.

MR. ROBERSON: I thank you, sir.

Dialogue between appellant's counsel and Ms. Reit developed as follows:

MR. ROBERSON: No. 16, how do you pronounce your name?

MS. REIT: Reit, Pam Reit.

MR. ROBERSON: Reit, R-e-i-t?

MS. REIT: Yes.

MR. ROBERSON: I think that you had raised your hand that you had some question.

MS. REIT: Not a question, it's just that I—

MR. ROBERSON: Well, let me answer them if I can. This is the only time we are going to get a chance to talk.

MS. REIT: It's not a question. I just would say that when I walked in there and this whole scene, I have a strong tendency to automatically think the defendant is guilty.

MR. ROBERSON: Well, do you feel that—or would you feel that if you are sitting on the jury panel up here once the Judge gives you what is known as the Charge, and only the Judge can give you what is the law is, and he explains the law to you—and let me ask this question of you right now.

Do you feel that one is—that we have got what is known as an Indictment, which I have tried to explain here, where it only takes nine people of twelve people to say we feel we have got enough facts here for this person to come into this court today. All right. That is part of the question. The next part of the question is do you feel that in the event the man says, I don't want to take the stand, I am not required to under the Texas Constitution, do you feel that you could hold that against him also?

MS. REIT: Probably, yes, I would automatically assume he was guilty, most likely.

MR. ROBERSON: In other words, if he—one is that the Indictment itself and number two, is if he made that decision.

MS. REIT: That would really give me—I mean, I would be pretty clear that there is—yeah.

MR. ROBERSON: Well, no, we are not trying to just get rid of you. We are just trying to find out what your true thoughts are.

MS. REIT: I don't mean to feel that way but I do.

MR. ROBERSON: You feel that you would—with the two of them there that you would really hold it against him?

MS. REIT: Yeah, I'm pretty sure I would.

MR. ROBERSON: Thank you for your honesty.

The record further reflects after both attorneys concluded their interrogation of the panel, the trial court offered each attorney an opportunity to call to the bench, for additional questioning, any panel member who expressed bias during voir dire. Appellant's trial counsel declined to call forward Howard, Machala, or Reit, for additional questioning. He pursued no challenge for cause and exercised none of his 10 peremptory challenges to strike any of the three from the jury. All three subsequently were seated on the jury, and Reit served as the jury's foreperson.

■ It is fundamental that in all criminal prosecutions, an accused is entitled to an impartial jury composed of people who are unprejudiced, disinterested, equitable, and just who have not prejudged the merits of the case. *Shaver v. State*, 280 S.W.2d 740, 742 (Tex.Crim.App.1955); TEX. CONST. art. I, § 10. The voir dire process is designed to insure to the fullest extent possible, that such an impartial jury will perform the duty assigned to it. *Salazar v. State*, 562 S.W.2d 480, 482 (Tex.Crim.App.1978).

■ Article 35.16(c)(2) of the Texas Code Of Criminal Procedure, allows the defense to challenge for cause any prospective juror who has a bias or prejudice against any law applicable to the case upon which the defense is entitled to rely, either as a defense to the offense being prosecuted or as mitigation of the punishment therefor. *Clark v. State*, 717 S.W.2d 910,

916–17 (Tex.Crim.App.1986); TEX.CODE CRIM.P.ANN. art. 35.16(c)(2) (Vernon Supp. 1992). When a prospective juror is biased against the law, or shown to be biased as a matter of law, he must be excused when challenged, even if he states that he can set his bias aside and be a fair and impartial juror. *Clark*, 717 S.W.2d at 917; *Anderson v. State*, 633 S.W.2d 851, 854 (Tex.Crim.App.1982).

In every criminal trial, all persons are presumed to be innocent, and the prosecution has the burden of proof beyond a reasonable doubt on each element of the offense. This is mandated on federal constitutional grounds, *In Re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970), and under the provisions of both TEX.PENAL CODE ANN. § 2.01 (Vernon 1974) and TEX.CODE CRIM.P.ANN. art. 38.03 (Vernon Supp.1992). Prospective jurors Howard, Machala, and Reit all expressed bias against these basic principles.

Howard repeatedly stated she thought appellant was guilty because he was in court charged with a crime. Appellant's counsel's efforts to rehabilitate her proved futile. Howard continued to assert "generally people are not falsely accused." Machala stated appellant was sitting in court for a reason, and the fact appellant had been indicted caused Machala to think appellant was guilty. He did say that "maybe after listening to the facts of a case, maybe I might go otherwise," but he went on to say, "I am just saying—just looking, I would tend to guilty." Reit stated when she walked into the courtroom she had a strong tendency to "automatically" think appellant was guilty. When asked whether she would hold it against appellant if he refused to testify, she responded, "probably, yes, I would automatically assume he was guilty."

Several other prospective jurors, not identified in the record, similarly stated they tended to believe appellant was guilty. Apparently, no effort was made to challenge these venirepersons, as the record is silent on this point.

Howard, Machala, and Reit were not qualified as a matter of law. None could

accord appellant the presumption of innocence, even after the trial court explained an indictment was no evidence of guilt. Their answers and statements reflect an attitude that shifts the burden of proof, from the State to establish guilt beyond a reasonable doubt, to the defense to prove appellant was innocent. According to Reit, if appellant failed to produce such evidence, she would automatically believe he was guilty. If appellant's trial counsel had properly challenged the three prospective jurors, it would have been error for the trial court to deny the challenges. *Homan v. State,* 662 S.W.2d 372, 374 (Tex.Crim. App.1984) (it was error to refuse to excuse prospective juror who stated defendant was probably "just a little guilty of something," and it would take some evidence to remove that feeling from his mind). *See Turner v. State,* 462 S.W.2d 9, 14 (Tex. Crim.App.1969) (proper for the State to challenge a prospective juror who stated he formed an opinion defendant was guilty, and proper for the State to challenge a venireperson who stated she would infer guilt if defendant did not testify).

We now must consider whether counsel's conduct of failing to challenge the unqualified prospective jurors constituted ineffective assistance of counsel. The standard for evaluating an ineffective assistance claim is the reasonably effective assistance standard articulated by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Crim.App.1990). The reasonably effective assistance standard has been interpreted as not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance. *Duncan v. State,* 717 S.W.2d 345, 347–48 (Tex.Crim.App.1986). Further, the standard presumes that any challenged action is considered sound trial strategy. *Rogers v. State,* 795 S.W.2d 300, 303 (Tex.App.— Houston [1st Dist.] 1990, pet. ref'd).

■ The *Strickland* test has two components. First, the defendant must demonstrate counsel's performance was deficient. This requires showing that counsel made errors so serious counsel was not functioning as the "counsel" guaranteed by the sixth amendment. Second, the defendant must establish the deficient performance prejudiced his defense. This requires proving counsel's errors were so serious the defendant was deprived of a fair trial.

■ In the present case, the first prong of *Strickland* is satisfied by appellant's counsel's apparent failure to understand the law that prohibits biased jurors from serving on a jury, and by his subsequent failure to object to the questionable prospective jurors after they expressed their bias. A failure to understand such law is unreasonable under prevailing professional norms and cannot be considered a strategic choice made after thorough investigation. In fact, counsel's failure to object to the biased venirepersons is not supported by any reasonable professional judgment.

The second prong of *Strickland* requires the convicted defendant affirmatively prove prejudice. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

In the present case, the challenged outcome is the treatment appellant received from the jury that returned a 50–year sentence. The record reflects appellant did present a defense through his own testimony. At the punishment phase, the State proved four prior misdemeanor convictions in addition to two prior felony convictions. These felony convictions were alleged for enhancement purposes to establish the minimum punishment at 25–years confinement. The two felony convictions were for the third-degree offenses of aggravated assault on a peace officer and credit card abuse. Each resulted in a sentence of two-years confinement. During argument, the State asked the jury to return a 50–year sentence. After 35 minutes of deliberation, the jury returned the requested 50–year sentence.

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Holland v. State,* 761 S.W.2d 307, 320 (Tex.Crim.App.1988). We cannot accurately evaluate the exact prejudicial effect caused by the improper impaneling of the three questionable prospective jurors. We do believe, however, appellant was not provided a fair and impartial jury to decide his guilt and punishment. When three people express an unequivocal and positive bias against the law upon which appellant is entitled to rely and are permitted to serve on the jury, the prejudicial effect is clear. The presence of one partial juror on a jury destroys the impartiality of the body and renders it partial. *Shaver,* 280 S.W.2d at 742. The use of a jury tainted by biased members, in our view, significantly undermines confidence in the outcome. Appellant's first point of error is sustained.

As point of error number one is dispositive of this case, we will not address appellant's second point of error.

The judgment of the trial court is reversed, and this case is remanded back to the trial court for a new trial.