PD-1179-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/30/2015 7:26:03 PM
Accepted 12/1/2015 3:30:36 PM
ABEL ACOSTA
CLERK

No. PD-1179-15

---

IN THE COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS

---

JULIO FRANCISCO GALVAN,
*Appellant,*

vs.

THE STATE OF TEXAS,
*Appellee.*

---

On Petition Discretionary Review of the
Judgment of the Court of Appeals for the
First Judicial District,
At Houston, Texas
**Appeal No. 01-00946-CR**

FILED IN
COURT OF CRIMINAL APPEALS

December 1, 2015

ABEL ACOSTA, CLERK

\* \* \*

248th Judicial District Court of
Harris County, Texas
**Trial Court No. 1362831**

---

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

---

**ORAL ARGUMENT REQUESTED**

PATRICK F. McCANN
State Bar No. 00792680
909 Texas Avenue
Suite 205
Houston, Texas 77002
PH: (713) 223-3805
eFax: (281) 667-3352

## IDENTIFICATION OF THE PARTIES

Pursuant to Rule 68.4(a) of the Texas Rules of Appellate Procedure, a complete list of the interested parties and entities is provided below:

**The Trial Court Below:**

Honorable Katherine Cabaniss, 248th District Court of Harris County, Texas

**Appellant:**

Julio Francisco Galvan, Appellant

Patrick F. McCann, Esq., Counsel on appeal for Appellant

 Boyd Wilson, Esq., Trial counsel for Appellant

**Appellee**:

The State of Texas, Appellee

Devon Anderson, Esq., District Attorney for Harris County, Texas

Abbie Miles, Esq., Assistant District Attorney on appeal for Appellee

Amanda Greer, Assistant District Attorney at trial for Appellee

# TABLE OF CONTENT

          **Page**

Cover .................................................................................... i

Identity of the Parties …………………………………………………….. ii

Table of Contents …………………….….................................................... iii

Index of Authorities …………………………........................................... v

Statement Regarding Oral Argument …………………………………….... 1

Statement of the Case …………………….................................................. 1

Statement of Procedural History …………….…....................................... 1

Grounds for Review …………………….…................................................... 2

## Ground One

WHETHER THE COURT OF APPEALS ERRED WHEN IT FOUND THAT MR. GALVAN WAS NOT DENIED THE REASONABLY EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY ALLOWED TWO JURORS WHO HAD VOICED ACTUAL BIAS AGAINST HIM TO BE SEATED ON HIS JURY?  (Slip Opinion at 9-13).

Reasons for Review …………….…................................................... 2

Argument …………………….…................................................... 3

## **Ground Two**

WHETHER THE COURT OF APPEALS ERRED WHEN IT FOUND THAT MR. GALVAN WAS NOT DENIED THE REASONABLY EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY FAILED TO PROPERLY OBJECT TO THE EVIDENCE OF AN EXTRANEOUS SEXUAL OFFENSE THAT MR. GALVAN HAD TOUCHED HIS 13 YEAR OLD DAUGHTER IN THE SAME MANNER AS THE COMPLAINANT? (Slip Opinion at 18-20).

Reasons for Review ……….…........................................... 8

Argument …………………….......................................... 8

Prayer for Relief …………………….................................... 13

Certificate of Compliance ……………….............................. 14

Certificate of Service ……………….................................... 15

Appendix

*Julio Francisco Galvan v. The State of Texas,*
    Appeal No. 01-13-00946-CR
    (Tex. App. [1st Dist.], July 16, 2015)
    (Memorandum Opinion not designated
    for publication)

# INDEX OF AUTHORITES

**Cases**                                                                  **Page**

*Borjan v. State*,
     787 S.W.2d 53 (Tex. Crim. App. 1990) ............................................. 3

*Boutwell v. State*,
     719 S.W.2d 164 (Tex. Crim. App. 1985) ........................................... 12

*Campbell v. State*,
     426 S.W.3d 780 (Tex. Crim. App. 2014) ........................................... 5

*Delrio v. State*,
     840 S.W.2d 443 (Tex. Crim. App. 1992) .................................... 2, 5, 6, 7

*Doles v. State*,
     786 S.W.2d 741 (Tex. App. 1989, *no pet.*) ................................ 8, 11, 12

*Elder v. State*,
     614 S.W.2d 316 (Tex. Crim. App. 1981) ........................................... 9

*Ex parte Martin*,
     6 S.W.3d 524 (Tex. Crim. App. 1999) ............................................ 4-5, 9

*Galvan v. State*,
     No. 01-13-00946-CR (Tex. App. [1st Dist.]
     Jul. 16, 2015) ............................................................ 1, *passim*

*Graham v. State*,
     657 S.W.2d 99 (Tex. Crim. App. 1983) ............................................. 10

*Green v. State*,
     899 S.W.2d 245 (Tex. App. 1995, *no pet.*) ....................................... 12

*Haley v. State*,
     173 S.W.3d 510 (Tex. Crim. App. 2005) ........................................... 11

*Hernandez v. State*,
       599 S.W.2d 614 (Tex. Crim. App. 1980) .............................................. 9

*Hernandez v. State*,
       726 S.W.2d 53 (Tex. Crim. App. 1986) ............................................. 3

*Jackson v. State*,
       850 S.W.2d 834, 837 (Tex. App.
       – Corpus Christi 1993), *rev'd*,
       877 S.W.2d 768 (Tex. Crim. App. 1994) ........................................... 6

*Mitchell v. State*,
       762 S.W.2d 916, 925 (Tex. App.
       – San Antonio 1988, pet. ref'd) ........................................................ 3

*Nelson v. State*,
       832 S.W.2d 762 (Tex. App. – Houston [1st Dist.]
       1992, no pet.) ................................................................. 2, 4, 5, 7

*Roberson v. State*,
       420 S.W.3d 832, 837 (Tex. Crim. App. 2013) .................................. 5

*Strickland v. Washington*,
       466 U.S. 668 (1984) ........................................................................ 3, 10

*Wintter v. State*,
       616 S.W.2d 197 (Tex. Crim. App. 1981) ........................................... 9

## Constitution, Statutes and Rules

TEX. R. EVID. 803(6) ...................................................................... 9

TEX. R. EVID. 803(8) ...................................................................... 9

TEX. R. EVID. 805 ........................................................................... 9

TEX. R. APP. P. 9.4(e) ........................................................................ 14

TEX. R. APP. P. 9.4(i) ......................................................................... 14

TEX. R. APP. P. 9.4(e)(1) ................................................................... 14

TEX. R. APP. P. 9.4(e)(2) ................................................................... 14

TEX. R. APP. P. 47.1 ....................................................................... 3, 5

TEX. R. APP. P. 66.1........................................................................ 4, 9

TEX. R. APP. P. 66.3(a) ....................................................... 3, 5, 7, 8, 12

TEX. R. APP. P. 66.3(c) .................................................................. 3, 7

TEX. R. APP. P. 66.3(f) ................................................................... 3, 7

## STATEMENT REGARDING ORAL ARGUMENT

This case presents very limited and unusual questions for review, and oral argument would assist the Court by posing questions to respective counsel in distinguishing Mr. Galvan's case from the decision in *Delrio v. State*, while permitting Galvan to demonstrate the similarities of his case with that of *Doles v. State*.

## STATEMENT OF THE CASE

Petitioner/Appellant Julio Francisco Galvan was charged by indictment with the aggravated sexual assault of B.L., a child younger than the age of fourteen (CR-12). Mr. Galvan entered a plea of not guilty to the charged offense, and a jury in the 248th District Court of Harris County, Texas, found him guilty as charged in the indictment (CR-87). The trial court, the Honorable Katherine Cabaniss presiding, assessed punishment at 15 years confinement in the Correctional Institutions Division of the Texas Department of Criminal Justice (*Id.*). Mr. Galvan filed his timely written notice of appeal to the First Court of Appeals at Houston (CR-90-91).

## STATEMENT OF PROCEDURAL HISTORY

The First Court of Appeal affirmed the judgment and sentence of the trial court in an unpublished memorandum opinion delivered July 16, 2015. *Galvan v.*

1

*State*, No. 01-13-00946-CR (Tex. App. [1ˢᵗ Dist.], Jul. 16, 2015) (*See* Appendix).

No motion for rehearing was sought by Mr. Galvan in the court of appeals.

Mr. Galvan sought an extension of time in which to petition this Court for discretionary review in this matter, which was denied by the Court on September 16, 2015. *Galvan v. State*, No. PD-1179-15 (Tex. Crim. App., Sept. 19, 2015). He then filed a motion for rehearing concerning the denial of the extension in time, which was granted by the Court on September 22, 2015. *Id.* Pursuant to this Court's September 22ⁿᵈ order, any petition for discretionary review received by its clerk on or before Tuesday, December 1, 2015, is timely filed.

## GROUNDS FOR REVIEW

**GROUND ONE:**

WHETHER THE COURT OF APPEALS ERRED WHEN IT FOUND THAT MR. GALVAN WAS NOT DENIED THE REASONABLY EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY ALLOWED TWO JURORS WHO HAD VOICED ACTUAL BIAS AGAINST HIM TO BE SEATED ON HIS JURY? (Slip Opinion at 9-13).

### *Reasons for Review*

The Court of Appeals decision in *Galvan v. State*, No. 01-13-00946-CR (Tex. App. - Houston [1ˢᵗ Dist.], Jul. 16, 2015) is in conflict with its own decision in *Nelson v. State*, 832 S.W.2d 762 (Tex. App. – Houston [1ˢᵗ Dist.] 1992, no pet.) and this Court's decision in *Delrio v. State*, 840 S.W.2d 443 (Tex. Crim. App. 1992), thus warranting the Court's intervention to maintain consistency in the

2

decisions in the First Judicial District of the Court of Appeals, as well as the lower courts of appeals. *See* TEX. R. APP. P. 66.3(a) and *Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990) (granting discretionary review where court of appeals decision was inconsistent with other decisions of the same court of appeals); TEX. R. APP. P. 66.3(c). Moreover, the Court of Appeals reliance upon unpublished decisions in disavowing, actually overruling, its published decision in *Nelson* necessitates an exercise of this Court's power of supervision in this matter under TEX. R. APP. P. 66.3(f).

### *Argument*

In an analysis riddled with error, the court of appeals below found that Mr. Galvan's trial attorney was not ineffective for allowing two actually biased jurors to be seated on the *venire* panel determining his guilt or innocence[1]. While implicitly acknowledging the biasedness of the seated jurors, the court reasoned, while erroneously relying on decisions emanating from this Court, that the right to an impartial jury may be waived by a defendant through counsel. *Galvan v, State*,

---

[1] This instance of ineffectiveness was actually one sub-part of nine contained in Mr. Galvan's first point of error challenging the cumulative effect of his trial attorney's performance during the guilt/innocence phase of his jury trial. *Galvan v. State*, Slip op. at 9. *But see, Hernandez v. State*, 726 S.W.2d 53, 63 (Tex. Crim. App. 1986) ("It is the cumulative effect of counsel's errors that must be evaluated, not the effect of each individual error.") (CLINTON, J., concurring), citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984) (a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.") (emphasis supplied). *See also Mitchell v. State*, 762 S.W.2d 916, 925 (Tex. App. – San Antonio 1988, pet. ref'd) (recognizing the cumulative effect of attorney error). However, the lower court of appeals did not see fit to address this facet of Mr. Galvan's point of error in its opinion. *Cf.* Tex. R. App. P. 47.1 (Opinion "must ... address[] every issue raised and necessary to final disposition of the appeal.").

No. 01-13-00946-CR, slip op. at 9-10 (*See* Appendix). What the lower courts analysis overlooks is the fact that while the right to an impartial jury may be waived by a defendant, the right to the reasonably effective assistance of counsel is not subject to such a waiver.

The factual and legal platform of Mr. Galvan's ineffectiveness of counsel claim concerning the seating of actually biased jurors is no different than that present in *Nelson v. State*. If anything, it is stronger. The panel's opinion in *Galvan* is in direct conflict with its own earlier opinion in *Nelson.* In that case the court held that:

> [T]he first prong of *Strickland* is satisfied by appellant's counsel's apparent failure to understand the law that prohibits biased jurors from serving on a jury, and by his subsequent failure to object to the questionable prospective jurors after they expressed their bias. A failure to understand such law is unreasonable under prevailing professional norms and *cannot be considered a strategic choice made after thorough investigation.* In fact, counsel's failure to object to the biased venirepersons is not supported by any reasonable professional judgment.

*Nelson*, 832 S.W.2d at 766 (emphasis supplied).

No less occurred with the trial attorney in Mr. Galvan's case as did in the *Nelson* case. And yet the lower court held that the trial attorney's decision not to challenge the jurors was strategic in this instance, and thus not deficient

4

performance.[2] This decision has created an irreconcilable conflict in the decisions in the First Judicial District that should be resolved by this Court. TEX. R. APP. P. 66.3(a).

Moreover, in creating this conflict in the holdings in its own district, the lower court of appeals has done so by blatantly ignoring the mandate of Tex. R. App. P. 47.7(a) by relying on unpublished decisions to overrule the published decision in *Nelson*. The panel has cited these opinions not as being "comparative and illustrative" as is permitted under Rule 47.7(a)[3], but as direct precedential authority in what it has conveniently termed "disavow[ing]" the decision in *Nelson*. However, as Rule 47.7(a) specifically and unequivocally states: "Opinions and memorandum opinions not designated for publication by the court of appeals under these or prior rules have no precedential value....". Tex. R. App. P. 47.7(a). *See Campbell v. State*, 426 S.W.3d 780, 783 n. 2 (Tex. Crim. App. 2014).

And last, the lower court of appeals appears to misunderstand and has clearly misapplied this Court's decision in *Delrio v. State*. The lower court has ignored this Court's cautionary statements in the *Delrio* opinion, and has blindly

---

2    The panel based its decision on a finding that counsel's performance was not deficient in that it was purportedly strategic. *See* slip op. at 13. The panel never addressed the issue of prejudice, thus that component of the two-prong analysis under *Strickland* will not be addressed in this petition. TEX. R. APP. P. 66.1 ("The Court of Criminal Appeals may review a court of appeals' ***decision*** in a criminal case....") (emphasis supplied). *See Ex parte Martin*, 6 S.W.3d 524, 525 n. 5 (Tex. Crim. App. 1999) ("We do not address this contention because the Court of Appeals did not base its decision on this basis[.]").

3    *See Roberson v. State*, 420 S.W.3d 832, 837 (Tex. Crim. App. 2013).

5

misused *Delrio* to find trial counsels failure to object to and exclude the seating of actually biased jurors on Mr. Galvan's jury.  In essence, the lower court has used, to paraphrase former Chief Justice Kennedy of the Corpus Christi Court of Appeals, this Court's decision in *Delrio* as a peg to hang its hat on in its hesitance to find the trial attorneys representation in Mr. Galvan's case to be ineffective. *Jackson v. State*, 850 S.W.2d 834, 837 (Tex. App. – Corpus Christi 1993), *rev'd*, 877 S.W.2d 768 (Tex. Crim. App. 1994).

The facts relied upon by this Court in *Delrio* to overrule the appellant's claim that his trial attorney was ineffective are distinguishable from those in Mr. Galvan's case.  In *Delrio*, the defendant was charged with possession of cocaine with intent to deliver, and the biased juror was a narcotics officer who actually "knew" the defendant. 840 S.W.2d at 445.  This Court reasoned that Delrio's trial attorney "may have believed [the juror's] impartiality favored his client", and further declined to exclude "the possibility that out of his own naivete [Delrio] himself may have given counsel some reason to believe [the jurors] partiality might favor [him].' *Id.* at 446.  This fact situation is not present in the case at bar.

In this case, no one on the panel indicated they knew Mr. Galvan or anything about him.  Mr. Galvan was charged with the sexual assault of a child.  Nothing in the record indicates that any of the prospective jurors knew anything more about Mr. Galvan than what was alleged in the indictment.  Thus there is no "possibility"

6

that either counsel or Mr. Galvan believed that the two actually biased jurors would favor Mr. Galvan.

This Court's decision in *Delrio* has a very narrow application to ineffectiveness of counsel claims involving biased jurors. In fact, this Court cautioned that it "expect[ed] the occasion to be rare...that under no circumstances could defense counsel justifiably fail to exercise a challenge for cause or peremptory strike against a venire person who deemed himself incapable of serving on the jury in a fair and impartial manner." 840 S.W.2d at 446. The fact situation present in *Delrio,* which is not present in Mr. Galvan's case, was just such a rare occasion.

It is also worth noting that, although the decision in *Delrio* was handed down a mere five months after the decision in *Nelson* was delivered, this Court did not deem it significant to mention much less overrule the decision in *Nelson.*

Thus this Court should grant discretionary review as to this ground pursuant to Rules 66.3(a), (c) and (f), and exercise its power of supervision to correct the errant panel of the lower court of appeals so as to maintain consistency and avoid confusion in the jurisprudence of the state.

## GROUND TWO:

WHETHER THE COURT OF APPEALS ERRED WHEN IT FOUND THAT MR. GALVAN WAS NOT DENIED THE REASONABLY EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY FAILED TO PROPERLY OBJECT TO THE EVIDENCE OF AN EXTRANEOUS SEXUAL OFFENSE THAT MR. GALVAN HAD TOUCHED HIS 13 YEAR OLD DAUGHTER IN THE SAME MANNER AS THE COMPLAINANT? (Slip Opinion at 18-20).

### *Reasons for Review*

The Court of Appeals decision in *Galvan v. State* with respect to the trial attorney's ineffectiveness in failing to properly object to and exclude evidence of a strikingly similar extraneous sexual offense involving Mr. Galvan's daughter as contained in a medical record exhibit is in conflict with the Tyler Court of Appeals decision in *Doles v. State*, 786 S.W.2d 741 (Tex. App. 1989, *no pet.*), and once again warrants this Court's intervention to maintain consistency in the decisions in the lower courts of appeals. TEX. R. APP. P. 66.3(a);

### *Argument:*

The trial court specifically ruled that the:

'[S]et of facts that are extraneous to the offense regarding [Mr. Galvan's] having committed the same type of thing against...his own daughter is more prejudicial than probative....'

*Galvan v. State*, Slip op. at 19. However, during trial, the State managed to bring in the evidence of this extraneous offense by offering into "evidence the medical records containing the statement about the extraneous act" without a proper

8

objection from the trial attorney. *Id.* The lower court of appeals, assuming *arguendo*[4] that this evidence was inadmissible and thus deficient performance on counsels part for failing to exclude it, merely concluded, without significant analysis, that Mr. Galvan had not shown a reasonable probability that the outcome of his trial would have been different had his trial counsel objected to the evidence. *Id.* at 20.

Although TEX. R. EVID. 803(6) and (8) are exceptions to the Hearsay Rule for business and official documents, hearsay statements contained within such documents are inadmissible unless they themselves fit within an exception to the Hearsay Rule. TEX. R. EVID. 805. The general rule is that when a document contains both admissible and inadmissible material the objection must specifically refer to the material deemed objectionable. *Wintter v. State*, 616 S.W.2d 197, 202 (Tex. Crim. App. 1981); *Hernandez v. State*, 599 S.W.2d 614, 617 (Tex. Crim. App. 1980). Admission of prejudicial inadmissible hearsay by a trial court over such an objection would constitute an abuse of discretion and reversible error. *Elder v. State*, 614 S.W.2d 316 (Tex. Crim. App. 1981).

---

[4] The lower court of appeals based its decision as to this sub-claim on what it perceived to be an absence of *Strickland* prejudice. (Slip op. at 20). So, while addressing in a cursory fashion the court of appeals contentions with respect to the inadmissibility of this evidence, as well as the trial attorney's deficient performance in this regard, Mr. Galvan's argument in this petition will focus on the issue of prejudice under the two-pronged analysis. TEX. R. APP. P. 66.1 and *Ex parte Martin*, 6 S.W.3d at 525 n. 5, *supra*.

9

The simple fact of the matter is that had trial counsel properly objected to the compound hearsay of the extraneous offense in the medical records, it likely would have been excluded. *Cf. e.g., Graham v. State*, 657 S.W.2d 99, 102 (Tex. Crim. App. 1983) (compound hearsay in medical examiners report; failure to object waived error).

In the context of an ineffectiveness of counsel claim, it must be presumed the factfinder, in this instance, the trial court, would have acted according to law, and excluded this inherently prejudicial evidence. *Strickland v. Washington*, 466 U.S. at 694-95. "The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id.* at 695. The trial court's ruling when initially confronted with the issue indicates that, if presented with the appropriate objection, it would have certainly excluded this evidence.

In assessing the likelihood that the jury's decision was adversely affected by an error, an appellate court should consider everything in the record, including (1) any testimony or physical evidence admitted for the jury's consideration, (2) the nature of the evidence supporting the verdict, (3) the character of the error and (4) how it might be considered in connection with other evidence in the case and may also consider (1) the jury instructions, (2) the State's theory, (3) any defensive

theories, (4) closing arguments, (5) voir dire, and (6) whether the State emphasized the error. *Haley v. State*, 173 S.W.3d 510, 518-19 (Tex. Crim. App. 2005).

In evaluating the record in accordance with *Haley,* two interrelated considerations stand out: (1) absent the improperly admitted medical records evidence, the only direct evidence supporting the guilty verdict was B.L.'s testimony, thereby making her credibility essential to a conviction (the nature of the evidence supporting the verdict, character of the error, and how it might be considered in connection with other evidence); and (2) the fact that two actually biased jurors were seated on the panel that determined Mr. Galvan's guilt or innocence (the *voir dire*).

As in *Doles v. State*, it is clear that the defense presented and relied on by Mr. Galvan was that he did not commit the charged offense. 786 S.W.2d at 741. He denied that he had ever sexually assaulted the victim. *Id.* Mr. Galvan further provided witnesses who expressed their disbelief that Mr. Galvan assaulted the victim. *Id.*

Given the inherently prejudicial nature of extraneous offense evidence in the medical report, the fact that that evidence would not have been otherwise admissible by the State during guilt/innocence, and the fact that Galvan's defense rested almost entirely on his credibility, and contrary to the lower court of appeals

decision in this instance, there is a reasonable probably that the outcome of Mr. Galvan's trial would have been different.

Admission of the hearsay in the medical report was harmful to Mr. Galvan's defense because there was no other evidence to corroborate B.L.'s story. There was no medical evidence and no eyewitnesses. The State's case depended solely on B.L.'s credibility, and this Court recognizes the "'inherently questionable testimony of a minor against an adult responsible for his welfare' or in a position of authority and control over the minor." *Boutwell v. State*, 719 S.W.2d 164, 178-79 (Tex. Crim. App. 1985). Thus the trial attorney's failure to understand, articulate and voice an appropriate objection to exclude the hearsay in the medical report, that would surely have been sustained by the trial court, was deficient performance that prejudiced Mr. Galvan's defense. *Doles v. State*, 786 S.W.2d at 746-47.

As the San Antonio Court of Appeals observed several years ago: "'Ineffectiveness of counsel' is not a specter. *It can exist*." *Green v. State*, 899 S.W.2d 245, 247-48 (Tex. App. 1995, *no pet.*). In Mr. Galvan's case, it *does* exist, and this Court should grant discretionary review to examine the issue to maintain consistency in the lower courts of appeals. TEX. R. APP. P. 66.3(a).

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Appellant prays this Honorable Court will **REVERSE** the judgment of the First Court of Appeal affirming the judgment and sentence of the trial court, and **REMAND** the case back to the trial court for a new trial, and that the Court further **GRANT** any additional relief to which the Appellant may be justly and legally entitled.

DATED 30th day of November, 2015.

Respectfully Submitted,

/s/ *Patrick F. McCann*

State Bar No. 00792680
Law Office of Patrick F. McCann
Suite 205, Rice Hotel
909 Texas Avenue
Houston, Texas 77002
(713) 223-3805
eFax: (281) 667-3352

**Counsel of Record for Appellant**
**Julio Francisco Galvan**

Prepared By:

Chris Bingham
ABA ID No. 02610780
Houston Contract Paralegal Services
1305 West 11th Street, Box 231
Houston, Texas 77008
Cell: (832) 762-5188
Email: houstoncontractparalegalservices@yahoo.com

13

**CERTIFICATE OF COMPLIANCE**

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. APP. P. 9.4(i), if applicable, because it contains no more than 2,707 words, nor does it exceed 15 pages as provided in TEX. R. APP. P. 9.4(i)(2)(D), excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

/s/ *Patrick F. McCann*
Patrick F. McCann

Counsel for the Appellant
Julio Francisco Galvan

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **APPELLANT'S PETITION FOR DISCRETIONARY REVIEW** has been duly served upon counsel representing the State of Texas in this matter by either Hand Delivery, Prepaid United States Mail, E-mail, or through this ***Court's Electronic Filing System*** on this 30th day of November, 2015, addressed as follows:

Alan Curry, Esq.
Assistant District Attorney
Harris County, Texas
1201 Franklin, Sixth Floor
Houston, Texas 77002
curry_alan@dao.hctx.net

Lisa McMinn
State Prosecuting Attorney
Office
Austin, Texas 78711
lisa.mcminn@spa.texas.gov

/s/ ***Patrick F. McCann***

Patrick F. McCann

Counsel for the Appellant
Julio Francisco Galvan

15

# APPENDIX



*Julio Francisco Galvan v. The State of Texas,*

Appeal No. 01-13-00946-CR

(Tex. App. [1ˢᵗ Dist.], July 16, 2015)

(Memorandum Opinion not designated for publication)



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00946-CR

———————————

## JULIO FRANCISCO GALVAN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 248th District Court
Harris County, Texas
Trial Court Case No. 1362831

## MEMORANDUM OPINION

A jury found appellant, Julio Francisco Galvan, guilty of aggravated sexual

assault of a child younger than fourteen years of age[1] and assessed his punishment

---

[1]    *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (Vernon Supp. 2014).

at confinement for fifteen years. In two issues, appellant contends that his trial counsel provided him with ineffective assistance.

We affirm.

## Background

The complainant testified that on the night of July 10, 2012, when she was twelve years old, she and her brother stayed overnight with their neighbors, appellant's family, while her mother, N.L., went to a hospital. The complainant, her brother, and appellant's three children played video games and watched movies until around midnight. When it was time to go to bed, the complainant shared a bed with appellant's daughter, I.G., who was fifteen years old. Appellant's younger daughter slept on a mattress, which was pushed up against the bed on the floor.

After sleeping for awhile, the complainant awoke and asked I.G. to go with her to the restroom. When they returned to the bedroom, I.G. told her to lock the door. The complainant noted that when she had previously slept over, I.G. had "always" locked the bedroom door. After the complainant was not able to lock the door, she simply went back to sleep.

The complainant later awoke at around 3:00 or 4:00 a.m. when she "felt something." The bedroom door was cracked open, and, in the light coming into the bedroom from the hallway, she saw appellant "sitting on his knees" at the "end

2

of the bed," with his hand "down to [her] private part." The complainant was wearing basketball shorts, and appellant put his hand under her shorts and panties. He then put his finger "in and out of [her] private part" for "about a minute or so." When the complainant moved her legs, appellant got up, left the room, and closed the door. I.G. then awoke and sat up, and the complainant told her what had just happened. I.G. was "mad" and locked the door, and the girls stayed up for awhile until they fell back to sleep.

In the morning, the complainant accompanied I.G. to speak with I.G.'s mother, Nora Galvan, and tell her what had happened. Because the complainant does not speak Spanish and Nora does not speak English, the complainant did not understand what I.G. said to Nora or what Nora said in response. Nora began yelling, however, and she and appellant then had an argument. The complainant and I.G. then went to the complainant's house and told N.L. what had happened.

N.L. testified that at around 9:00 p.m. on July 10, 2012, she called appellant, her neighbor, to ask if he and Nora would watch the complainant and her brother so she could go to a hospital. Appellant agreed, and N.L. walked her children over to appellant's house. At around 11:30 the next morning, the complainant and I.G. arrived at N.L.'s house, acting "embarrassed." The complainant said, "Mom, I have to tell you something," and she told her mother that appellant had "touched her." The complainant explained that "she woke up to appellant putting his fingers

inside of her," referring to her "vagina area." N.L. called for law enforcement assistance and took the complainant to a hospital.

Harris County Sheriff's Office Deputy C. Gbunblee testified that at around 3:00 p.m. on July 11, 2012, he was dispatched to N.L.'s house to investigate a sexual assault. Upon his arrival, he spoke with the complainant, who was "scared," and N.L., who was "very upset." Gbunblee then went to appellant's house and spoke with appellant, Nora, and I.G. Appellant explained to him that at approximately 10:00 p.m. the night before, he had told the children to go to sleep. After he went to bed, however, he heard the children making noise. Once he got up, the children got quiet, and he turned off the hallway light and went back to bed.

Children's Assessment Center ("CAC") forensic interviewer L. Holcomb testified that she interviewed the complainant on July 24, 2012 for "16 minutes." The complainant told Holcomb "what happened" in a "matter-of-fact" manner that was "typical" for a child of her age. Holcomb emphasized that it was not her role to determine "whether a child is telling the truth [or] a lie."

Dr. L. Thompson, Jr., CAC Director of Therapy and Psychological Services, testified in general regarding manners of disclosure demonstrated by child victims of sexual assault. And he noted that he was aware of instances in which children had been sexually abused in the presence of other people, including while in the same bed.

4

Appellant testified that a week before the incident, he and Nora had explained to N.L. that they no longer wanted the complainant and her brother to stay overnight at their home because the children liked to stay up "until the early morning hours." He and Nora had allowed N.L.'s children to stay the night of July 10, 2012 only because N.L. needed to go to a hospital. That night, after he and Nora had watched a movie, she went to bed. At around 1:30 a.m., appellant told the children, who were in the living room watching a movie, to go to sleep. After appellant went to bed, he heard "voices" and realized that the children were still awake in I.G.'s bedroom. Appellant then went to I.G.'s bedroom, turned on the hall light, and opened the door. Two of the girls were in the bed, and one was on a mattress on the floor. Because the mattress on the floor blocked the door, appellant could not open the door completely. And he did not go into the room. After "moving" and "laughing," the girls went still, and appellant went back to bed. The next morning, I.G. told Nora that he had touched the complainant.

Nora testified that on the night of the incident, the girls had made noise and she had "yelled" at them to go to sleep. Appellant had to get up at around 4:00 a.m. to go and tell the girls to be quiet. She noted that he was gone "not too long" before returning to bed. Later that morning, after I.G. told her what the complainant had said, she was "surprised" and immediately told appellant, who thought she was "joking."

5

I.G. testified that the complainant had stayed overnight with her about every other week, and her parents no longer wanted the complainant to stay over because she and the complainant stayed awake too late. At around midnight on July 10, 2012, appellant told the girls to go to bed. I.G. explained that her bed was up against a wall and, with the mattress on the floor, one could not walk between the bed and the mattress. She also noted that because of the location of the mattress, the bedroom door could barely be opened, and one had to walk on the mattress to enter the room. When getting into the bed, I.G. and the complainant had had to climb over the footboard of the bed to avoid waking I.G.'s younger sister. After going to bed, I.G. and the complainant continued to talk for thirty to forty-five minutes, and appellant had to again instruct them to go to sleep. However, when he came the second time to tell the girls to go to sleep, appellant did not enter the bedroom. He turned on the hall light, and I.G. saw him and heard him. And she locked the door after he walked away. I.G. further explained that appellant could not have come into the bedroom without her noticing. She emphasized that "at no point did [appellant] enter the room," and she noted that she would have felt it had he gotten onto the bed.

I.G. did not remember getting up with the complainant and going to the restroom. She did remember, however, waking and seeing the complainant crying. After they talked, they went back to sleep. The next morning, I.G. told Nora what

6

the complainant had said had happened. And Nora then spoke with appellant. After appellant left, I.G. and the complainant went to the complainant's house and told N.L.

In the State's rebuttal, J.K. McManemy, M.D., testified that she examined the complainant at the hospital on July 11, 2012. She explained that although she found no bruising, lacerations, or abrasions on the complainant during the examination, none were expected based on the allegation of digital penetration. The trial court admitted into evidence the complainant's medical records pertaining to the examination. And M. Miller, appellant's neighbor, testified that appellant had admitted to her after the incident that he had gone into I.G.'s bedroom. He explained, however, that he had just patted the complainant on the head.

## Standard of Review

To establish a claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's

7

performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). Appellant has the burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

Generally, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). In the rare case in which trial counsel's ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal. *Lopez*, 343 S.W.3d at 143. However, the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law and no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of counsel's subjective reasoning. *Id.*

**Ineffective Assistance of Counsel**

In his first and second issues, appellant argues that his trial counsel's performance was deficient during the guilt phase of trial because counsel (1) impanelled two jurors who had each voiced bias against the defendant; (2) failed to test the competency of the complainant; (3) failed to object to hearsay; (4) failed to properly object to evidence of an extraneous bad act; (5) failed to request prior statements from testifying witnesses; (6) failed to voir dire the State's experts; (7) elicited hearsay testimony; (8) failed to file or obtain rulings on pre-trial motions; and (9) failed to preserve error regarding a variance between the indictment and the jury charge. Further, appellant argues that his trial counsel's performance was deficient during the punishment phase of trial because counsel failed to present any mitigating evidence.

***Juror Bias***

In regard to appellant's assertion that his trial counsel failed to challenge or strike two veniremembers who expressed bias against him, we note that the Texas Court of Criminal Appeals has stated that the Sixth Amendment right to an impartial jury is "subject to waiver (or even forfeiture) by the defendant in the interest of overall trial strategy." *State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008). The Texas Legislature has expressly made a defendant's right to challenge a prospective juror for cause on the basis of an actual bias subject to

waiver. *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 35.16(9), (11) (Vernon 2006) ("No juror shall be impaneled when it appears that the juror is subject to the second, third or fourth grounds for challenge for cause set forth above, although both parties may consent. All other grounds for challenge may be waived by the party or parties in whose favor such grounds of challenge exist."). And because it is a right to be exercised at the option of the defendant, it is also "subject to the legitimate strategic or tactical decision-making processes of defense counsel during the course of trial." *Id.*

Appellant asserts that veniremembers numbers forty-five and forty-eight expressed bias against him during voir dire, as follows:

| [State]: | . . . . [I]n this case, we've alleged penetration of the sexual organ of [the complainant]. Got to prove who the complainant is. I have to prove to you that she's younger than 14 years of age. Okay. By placing his finger, the defendant's finger, in the sexual organ of [the complainant]. Those are my elements. Those are the only things I have to prove. |
|---|---|
| . . . . | |
| | Okay. A lot of times when I'm talking to jurors on these cases or when the defense stands up, they'll ask you this question: Who can't be fair? And all of a sudden everybody's raising their hands and I can't be fair because what are you thinking? I don't like this kind of case. I think this is horrible. . . . But when you say you can't be fair, I'm going to define that. |

10

> What you're saying is that before you have heard a single shred of evidence, before you have heard a witness, before you have seen a map, before any of that, you've already decided what you're going to do in this case. You have some sort of telepathy and you know what's going to happen and you know what your verdict will be. Okay? Is there anybody here who feels that way? I can't be fair. I don't care what the evidence shows, I simply cannot follow the law.

. . . .

VENIREPERSON: 45.

[State]: 45.

VENIREPERSON: 48.

[State]: 48.

Trial counsel did not challenge for cause or exercise a peremptory strike against either venireperson, and both served on the jury.

In *Delrio v. State*, trial counsel for the defendant, who was on trial for possession of cocaine with intent to deliver, did not challenge for cause, or exercise a peremptory strike against, a panel member who had stated during voir dire that he was a former narcotics officer, knew the defendant, and could not be fair and impartial. 840 S.W.2d 443, 443–45 (Tex. Crim. App. 1992). The panel member then served on the jury. *Id*. at 445. The court of criminal appeals explained that although "a single partial juror will vitiate a conviction," the right to trial by an impartial jury is subject to waiver or forfeiture by the defendant in the interest of

11

trial strategy. *Id*. at 445–47. And a "[w]aiver of [a] client's right to insist that every juror in the case be in all things fair and impartial may in counsel's best professional judgment have been an acceptable gamble." *Id*. at 447. The court noted that it could "envision circumstances" under which counsel might have "justifiably chosen not to exercise a challenge for cause or peremptory strike against a venireman who deemed himself incapable of serving on the jury in a fair and impartial manner." *Id.* at 446. The court then held that on a record that did not contain counsel's reasoning, it "must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (quoting *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066).

Here, although veniremembers forty-five and forty-eight expressed actual bias against appellant, this alone, according to the Texas Court of Criminal Appeals, is not sufficient to overcome the presumption that appellant's trial counsel exercised reasonable professional judgment during jury selection. *See id.* And the record is silent regarding the motivations of counsel in not challenging or striking veniremembers forty-five and forty-eight. *See id.*; *see also Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex. Crim. App. 1994) (noting silent record regarding trial counsel's motivations in not challenging or striking juror who had

12

expressed bias against defendant failed to rebut presumption of effective assistance).

In support of his argument that his trial counsel's performance should be presumed ineffective because no sound strategy could justify counsel's failure to challenge the venirepersons, appellant relies on *Nelson v. State*, 832 S.W.2d 762, 766–67 (Tex. App.—Houston [1st Dist.] 1992, no pet.). This Court has disavowed *Nelson*, however, as predating the holdings of the court of criminal appeals in *Jackson* and *Delrio*. *See Bratcher v. State*, No. 01-08-00610-CR, 2009 WL 1331344, at *3 (Tex. App.—Houston [1st Dist.] May 14, 2009, pet. ref'd) (mem. op., not designated for publication) (citing *Parish v. State*, No. 01–96–00279–CR, 1997 WL 760611, at *2 (Tex. App.—Houston [1st Dist.] Nov. 26, 1997, no pet.) (mem. op., not designated for publication)).

Accordingly, we hold that appellant has not shown that his trial counsel's performance was deficient on the ground that he failed to challenge or strike veniremembers number forty-five and forty-eight. *See Delrio*, 840 S.W.2d at 446.

*Competency*

Appellant next argues that his trial counsel should have, but "failed to test the competency" of the complainant, who was "the State's only witness with personal knowledge," because he had notice that the complainant "saw a

13

neurologist" and took a prescription medication that affected "all of her body's systems and is prescribed for bipolar disorder."

A witness is competent to testify if she (1) can intelligently observe events at the time of their occurrence, (2) has the capacity to recollect those events, and (3) has the capacity to narrate those events to the jury. *See Hogan v. State*, 440 S.W.3d 211, 213–14 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *see also* TEX. R. EVID. 601(a). "The third element involves the ability to understand the moral responsibility to tell the truth, to understand the questions posed, and to frame intelligent answers." *Hogan*, 440 S.W.3d at 214. Children "shall be incompetent to testify" if, "after being examined by the court, [they] appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated." *Gilley v. State*, 418 S.W.3d 114, 120 (Tex. Crim. App. 2014); *see also* TEX. R. EVID. 601(a)(2). Moreover, a trial court may inquire as to "whether the child-witness possesses the capacity to appreciate the obligations of the oath [to tell the truth while testifying]—or can at least distinguish the truth from a lie." *Gilley*, 418 S.W.3d at 121. Inconsistent or confusing responses from a child do not necessarily mean that the child is incompetent to testify; rather, such matters speak to the credibility of her testimony. *In re A.W.*, 147 S.W.3d 632, 635 (Tex. App.—San Antonio 2004, no pet.).

Here, the complainant demonstrated the capacity to recollect events and narrate them to the jury. *See Hogan*, 440 S.W.3d at 213–14. She answered the questions posed to her and offered explanations. *See id.* And she demonstrated an ability to distinguish between the truth and a lie. *See Gilley*, 418 S.W.3d at 121. Appellant does not direct us to any authority to support his assertion that counsel was ineffective for not challenging the complainant's competency to testify on the ground that she had seen a neurologist and was taking a particular prescription medication for a "seizure disorder."

Accordingly, we hold that appellant has not shown that his trial counsel's performance was deficient on the ground that he "failed to test the competency" of the complainant.

***Hearsay***

In regard to appellant's assertion that his trial counsel "failed to recognize and object to the admissibility of hearsay from two . . . different witnesses about the same alleged event, when neither qualifie[d] as an 'Outcry Witness,'" we note that a hearsay statement made to an outcry witness by a child victim of a sexual offense is admissible. TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon Supp. 2014). An outcry witness is the first person over the age of eighteen, other than the defendant, to whom the child made a statement about the offense. *Id.* art. 38.072, § 2(a)(3). The statement must be "more than words which give a general allusion

15

that something in the area of child abuse is going on"; it must be made in some discernable manner and is event-specific rather than person-specific. *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). There may be only one outcry witness per event. *Broderick v. State*, 35 S.W.3d 67, 73–74 (Tex. App.—Texarkana 2000, pet. ref'd). Hearsay testimony from more than one outcry witness may be admissible only if the witnesses testify about different events. *Id.* at 73. To invoke the statutory exception, the party intending to offer the statement must notify the adverse party of the name of the outcry witness and a summary of the testimony, the trial court must conduct a hearing outside the presence of the jury to determine the reliability of the witness, and the child victim must testify or be available to testify at the proceeding. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(1)(A–C).

Here, the State gave appellant notice of its intent to offer the complainant's outcry statements through N.L. and Holcomb. *See id.* Appellant argues that N.L. and Holcomb could not qualify as outcry witnesses because the evidence establishes that the complainant first told appellant's daughter, I.G., "who was 18 at the time of trial," about the offense and then together told appellant's wife, Nora. And she notes that the complainant did not tell her own mother, N.L., about the offense until several hours later. Further, Holcomb did not speak with the

16

complainant until thirteen days after the offense had occurred and the complainant had already spoken with I.G. and Nora about the offense.

The State asserts that although it gave notice of intent regarding "two potential outcry witnesses," N.L. and Holcomb, it expressed its intent, prior to the commencement of the guilt phase of trial, to offer only the outcry testimony of N.L. It then "proffered the circumstances around which the outcry was made," and Holcomb "never testified as an outcry witness."

The record shows that the State, at the beginning of trial and outside the presence of the jury, informed the trial court that it had discussed with defense counsel off the record that it intended to present N.L. N.L. then testified about the complainant's disclosure to her of the details of the offense. And the record shows that Holcomb testified only about her observations of the complainant during their interview, and she did not testify about any of the details of the offense that the complainant had related to her. Thus, Holcomb did not testify about the complainant's outcry to her or present any hearsay testimony.

Moreover, because I.G. was not eighteen at the time of the complainant's outcry, I.G. could not be an outcry witness. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3) (defining outcry witness as first person "over the age of 18" to whom child makes statement about offense). And Nora could not be an outcry witness because the complainant did not speak to her about the offense. *See id.*

17

The complainant testified that she does not speak Spanish, Nora does not speak English, and the complainant did not understand anything that I.G. said to Nora or anything that Nora said in response.

Accordingly, we hold that appellant has not shown that his trial counsel's performance was deficient on the ground that he failed to object to hearsay evidence presented by "two . . . different witnesses" not qualified to testify about the complainant's outcry.

***Extraneous Act***

Appellant next asserts that his trial counsel "improperly objected to the admissibility of extraneous bad act evidence as hearsay, when the State gave notice of its intent to use unredacted medical records containing notes—in the form of hearsay within hearsay—of an unsubstantiated extraneous bad act."

The record shows that the trial court admitted into evidence the records of the complainant's medical examination, which was conducted on July 11, 2012. The records include the following statement taken by hospital personnel: "Social worker consulted to assess patient in EC due to sexual assault. . . . [The complainant's] friend [I.G.] said that her father had done the same thing (touched her vagina) when she was around 13."

Appellant's trial counsel moved "in limine" to exclude as hearsay any testimony by Deputy Gbunblee regarding I.G.'s statements to the complainant

about the extraneous act. After the trial court stated that "the answers to the questions would be hearsay," it then asked whether the statements were "admissible." The State responded, "I think [defense counsel] thinks it would be more prejudicial than probative." And the trial court ruled that the "set of facts that are extraneous to the offense regarding the defendant's having committed the same type of thing against . . . his own daughter is more prejudicial than probative at this point; however, [the State] can ask about the conversation and demeanor, not . . . what was said." *See* TEX. R. EVID. 403.

During trial, when the State attempted to ask about the extraneous act, the trial court sustained defense counsel's hearsay objection. However, when the State offered into evidence the medical records containing the statement about the extraneous act, trial counsel stated that he had no objection "other than [his] previous hearsay objection." The trial court overruled the objection and admitted the record into evidence. Appellant asserts that his trial counsel never made a previous objection to the medical records as containing hearsay. And he did not object to the statement in the records about the extraneous offense on the ground that it was more prejudicial than probative.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or needless presentation

19

of cumulative evidence. TEX. R. EVID. 403. Here, appellant, in his brief, does not provide any analysis of the factors pertinent as to whether the probative value of the statement about the extraneous offense was substantially outweighed by the danger of unfair prejudice. *See Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (providing factors); *see also Santellan v. State*, 939 S.W.2d 155, 173 (Tex. Crim. App. 1997) (declining to address defendant's "unarticulated Rule 403 complaints").

Even were we to conclude, however, that the statement about the extraneous act was inadmissible, appellant has neither argued, nor shown a reasonable probability, that the outcome of his trial would have been different had his trial counsel objected to the statement. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2064.

Accordingly, we hold that appellant has not shown that, but for counsel's error in not objecting to the statement about the extraneous act mentioned in the medical records, the result of the proceeding would have been different. *See id.*

### *Failure to Investigate*

In regard to appellant's assertion that his trial counsel "failed to request prior statements for each testifying witness, knowing that each witness gave prior statements," we note,

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the

20

witness, must order an attorney for the state or the defendant and defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

TEX. R. EVID. 615(a).

At trial, Deputy Gbunblee testified that he had obtained written statements from the complainant and her mother, N.L. Appellant complains that his trial counsel "had no idea whether the statements would be inconsistent and could be used as the basis for impeachment," even though the State, in its pre-trial Notice of Intention to Use Extraneous Offenses and Prior Convictions, suggested that the complainant "gave at least one other inconsistent statement." He asserts that the notice refers to "multiple offenses of penetration and sexual contact between appellant and the [complainant]," stating that offenses occurred on "multiple occasions pursuant to a continuing course of contact." He notes, however, that the medical records state that the complainant's "'hymen is normal,' intact, and had no signs of injury." Appellant argues, thus, that this "should have raised a flag" that the complainant gave inconsistent statements, "at least at some point in the investigation." And had trial counsel moved to obtain these statements, either before or during trial, "the State would have been ordered to turn [them] over" and they "would have served as a viable basis for impeaching the credibility" of the complainant.

21

Nothing in the record, however, establishes that appellant's trial counsel did not actually have in his possession the statements at issue. Further, the State's notice does not concern any statements by the complainant or N.L. And the fact that the medical examination of the complainant did not reveal any evidence of injury does not in any way render the complainant's testimony inconsistent. Dr. McManemy explained that "95 percent of the time," child victims of sexual assault "have no abnormal physical findings on the exam."

Accordingly, we hold that appellant has not shown that his trial counsel's performance was deficient on the ground that he "failed to request prior statements for each testifying witness."

### *Experts*

Appellant next argues that his trial counsel's performance was deficient because counsel "failed to voir dire the State's experts, permitted them to testify without objection, and failed to produce contradicting experts to show that no scientific/forensic evidence of penetration may also be evidence that no offense occurred."

In regard to his assertion that his trial counsel "failed to voir dire the State's experts," Holcomb and Dr. Thompson, appellant notes that a party against whom an expert's opinion is offered "must . . . be permitted" to conduct a voir dire examination of the expert. *See* TEX. R. EVID. 705(b). And he asserts that Holcomb

22

and Thompson "testified without a single objection from trial counsel." Appellant does not, however, explain why voir dire was needed, nor does he state what objections trial counsel should have made.

In regard to his assertion that his trial counsel "failed to . . . articulate either through cross-examination or defense experts that no evidence of penetration" could constitute "evidence that no offense occurred," appellant notes that the complainant's medical records show that no physical injuries were found on the complainant, counsel failed to thoroughly cross-examine Holcomb and Dr. Thompson, and counsel failed to present expert testimony to contradict them. However, appellant does not state what trial counsel should have asked during cross-examination. *See Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005) (noting suggestion cross-examination should have been conducted differently "does not rebut the presumption that counsel's conduct fell within the wide range of reasonable professional assistance"). Further, the medical records show that Dr. McManemy explained that although no bruising, lacerations, or abrasions were found on the complainant, no such physical evidence is found in the majority of cases involving digital penetration. Thus, appellant has not demonstrated that expert testimony was necessary to establish that a lack of physical evidence could constitute evidence that no offense occurred.

23

Accordingly, we hold that appellant has not shown that his trial counsel's performance was deficient on the ground that he failed to voir dire the State's experts, permitted them to testify without objection, or failed to present "contradicting experts."

### *Eliciting Damaging Testimony*

Appellant next argues that his trial counsel's performance was deficient because he "illicit[ed] damaging hearsay [testimony] on cross examination" of the State's rebuttal witness, Melissa Miller, as follows:

| | |
|---|---|
| [State]: | So when [appellant] told you he did not know what was going on, what else did he say? |
| [Miller]: | He said that [the complainant was] trying to ruin his life. I said, I don't know what you're talking about. He said, she said that I touched her. He said, I didn't do anything. *I went in there to check on her. I patted her on the head. That's all.* I said, I still have no idea what you're talking about. Let me go out and see what's going on. |
| . . . . | |
| [Defense Counsel]: | So when you're talking to him on the phone *or you say that he says that he went into the room, did you ask him whether or not he was checking on his daughters as well*? |
| [Miller]: | No, sir. |
| [Defense Counsel]: | Did he say that he was? |

24

| | |
|---|---|
| [State]: | Objection, hearsay. |
| [Trial Court]: | Overruled. |
| [Defense Counsel]: | You can go ahead and answer the question. |
| [State]: | Your Honor, pursuant to party opponent, he's not allowed to introduce his client's own statement. |
| [Trial Court]: | I'm sorry. Approach the bench. |
| (At the bench) | |
| [State]: | Judge, I'm objecting under hearsay that he is trying to introduce his own client's statement through this witness. I get to do that because the party opponent rules is that he can only introduce his client's statement by putting his client on the stand. That's my objection. |
| [Trial Court]: | Your objection—the remainder of the content of the conversation you're saying doesn't come in? |
| [State]: | Unless he puts his client on to say, but he's not allowed to say from this witness, [m]y client said this, didn't he? |
| [Trial Court]: | I think once you call the witness, the content of the statement comes in. |
| [State]: | Okay. |
| [Trial Court]: | The good and the bad. |

25

| | |
|---|---|
| [State]: | Okay. Overruled |

(End of Bench Discussion)

| | |
|---|---|
| [Defense Counsel]: | *. . . I was asking you whether or not [appellant] mentioned also whether he was checking on his own daughters as well?* |
| [Miller]: | *I don't remember. He had told me that there was a light on and he was flipping the light off, so.* |
| [Defense Counsel]: | *You recall him mentioning that the light that he flipped on and off was out in the hallway?* |
| [Miller]: | *No.  It was in the bedroom.* |
| [Defense Counsel]: | And you've already said that you personally did not ask him whether or not he was checking on his girls as well? |
| [Miller]: | No. |

(Emphasis added.)  Appellant asserts that the above cross examination placed him inside the girls' bedroom, in direct contradiction to his own testimony that he turned on the hallway light, not the bedroom light, and stayed in the hallway because the bedroom door was blocked by a mattress.

However, as revealed above, Miller, under direct examination by the State had already testified that appellant had told her that he went in to the bedroom "to check on" the complainant and "patted her on the head."   The State asserts that appellant's trial counsel, through cross examination, was merely attempting to

26

mitigate the effects of Miller's testimony by trying to corroborate appellant's testimony and show that in checking on the complainant "and his own daughters as well," he acted as would a "reasonable father and caretaker."

Accordingly, we hold that appellant has not shown that his trial counsel's performance was deficient on the ground that he "illicit[ed] damaging hearsay [testimony] on cross examination."

### *Pretrial Motions*

In regard to appellant's assertion that his trial counsel "submitted another lawyer's pretrial motions and then failed to request a ruling on the motions." The record does show that trial counsel substituted in on April 10, 2013 and was appellant's third attorney in the case. On April 12, 2013, a motion in limine, motion for discovery, and request for notice of the State's intent to use evidence of extraneous offenses at trial were filed, apparently by appellant's previous counsel. Appellant complains that his trial counsel did not seek rulings from the trial court on these motions and did not file any pre-trial motions of his own.

We may not speculate on a silent record, however, as to whether such rulings were necessary. *Wert v. State*, 383 S.W.3d 747, 757 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Absent a record regarding counsel's trial strategy, we may not speculate as to why counsel did not file discovery motions, interview State witnesses, or file a motion in limine."). By the time that trial counsel might have

sought a ruling, the State might have already complied with the substance of the discovery motion and request for notice; and motions in limine, whether granted or denied, do not preserve error. *See id.*

Further, appellant does not assert that any specific motions should have been filed by his trial counsel. A decision not to file pre-trial motions does not categorically constitute ineffective assistance. *See Mares v. State*, 52 S.W.3d 886, 891 (Tex. App.—San Antonio 2001, pet. ref'd).

Accordingly, we hold that appellant has not shown that his trial counsel's performance was deficient on the ground that he "unreasonabl[y] submitted another lawyer's pretrial motions and then failed to request a ruling on the motions."

### *Variance*

In regard to appellant's assertion that his trial counsel "failed to identify and preserve error [regarding] the variance between the indictment and the jury charge," he argues that the jury charge "diminishe[d] the State's burden to prove the allegations as set for[th] in the indictment" because the indictment alleged that he acted "intentionally *and* knowingly," while the jury charge required a finding that he acted "intentionally *or* knowingly." (Emphasis added.)

"It is well established that the State may plead in the conjunctive and charge in the disjunctive," whenever the statutory language is disjunctive. *Cada v. State*,

334 S.W.3d 766, 771 (Tex. Crim. App. 2011). Courts have specifically upheld challenges to jury charges where indictments alleged that offenses were committed with the culpable mental states of "intentionally and knowingly" and the jury charges authorized a finding of guilty if the defendant acted "intentionally or knowingly." *Zanghetti v. State*, 618 S.W.2d 383, 387–88 (Tex. Crim. App. 1981). The unanimity requirement is not violated when a jury has the option of choosing between alternative modes of commission. *Pizzo v. State*, 235 S.W.3d 711, 715 (Tex. Crim. App. 2007).

A person commits an offense of aggravated sexual assault of a child if the person "intentionally *or* knowingly . . . causes the penetration of the anus or sexual organ of a child by any means." TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (Vernon Supp. 2014) (emphasis added). Because the statutory language is in the disjunctive, the State properly charged the requisite culpable mental states for the offense conjunctively in the indictment, and the trial court properly charged the jury in the disjunctive. *See Nickerson*, 782 S.W.2d at 891; *see also Barrera v. State*, No. 01-03-00102-CR, 2004 WL 637954, at *6 (Tex. App.—Houston [1st Dist.] Apr. 1, 2004, no pet.) (mem. op., not designated for publication).

Accordingly, we hold that appellant has not shown that his trial counsel's performance was deficient on the ground that he "failed to identify and preserve error in the variance between the indictment and the jury charge."

29

*Punishment Phase*

Finally, appellant argues that his trial counsel's performance was deficient during the punishment phase of trial because he did not present any mitigating witnesses. Appellant asserts that his wife and children were available and willing to testify as to his good moral character. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (Vernon Supp. 2014).

Neither the defense nor the State presented any witnesses during the punishment phase. There is nothing in the record, however, regarding whether defense counsel failed to investigate the availability of any potential mitigating witnesses or conducted an investigation and concluded that the witnesses discovered would not be favorable. *See Anderson v. State*, 193 S.W.3d 34, 39 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (declining to conclude counsel ineffective where no record from which to determine whether counsel acted reasonably in not calling any witnesses). Appellant's trial counsel may have determined that subjecting appellant's family members to cross-examination would not be in appellant's best interest. *Gaston v. State*, 136 S.W.3d 315, 322 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd) (stating whether to present witnesses is largely matter of trial strategy).

Accordingly, we hold that appellant has not shown that his trial counsel's performance was deficient on the ground that he did not present any mitigating

witnesses during the punishment phase of trial. *See Martinez v. State*, 449 S.W.3d 193 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Rodriguez v. State*, 292 S.W.3d 187, 190 (Tex. App.—Amarillo 2009, no pet.) ("Without record evidence of what, if any, mitigating evidence was available to appellant and counsel's reasons for not offering such evidence as existed, appellant is unable to overcome the presumption that counsel's conduct falls within the wide range of reasonable professional assistance.").

We overrule appellant's first and second issues.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).